SEYFARTH SHAW LLP
Christopher A. Crosman (SBN 190336)
ccrosman@seyfarth.com
Matthew Isaac (SBN 328882)
misaac@seyfarth.com
Katherine R. Farr (SBN 355518)
kfarr@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

Attorneys for Defendants
HERTZ TRANSPORTING, INC., THE HERTZ CORPORATION AND HERTZ LOCAL EDITION TRANSPORTING, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DARIUS WATSON, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

HERTZ TRANSPORTING, INC., a Delaware corporation; THE HERTZ CORPORATION, a Delaware corporation; HERTZ LOCAL EDITION TRANSPORTING, INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No. 2:26-cv-08867

**DEFENDANTS HERTZ TRANSPORTING, INC., THE HERTZ CORPORATION AND HERTZ LOCAL EDITION TRANSPORTING, INC.'S NOTICE OF REMOVAL**

*[Los Angeles County Superior Court Case No. 26STCV19805*

Action Filed: June 23, 2026

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF DARIUS WATSON AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTIC**E that Defendants HERTZ TRANSPORTING, INC, THE HERTZ CORPORATION and HERTZ LOCAL EDITION TRANSPORTING, INC. ("Defendants"), hereby remove the above-captioned case from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California, asserting original jurisdiction under 28 U.S.C. section 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), removal jurisdiction under 28 U.S.C. sections 1441(a), 1446, and 1453, and supplemental jurisdiction pursuant to 28 U.S.C. section 1367. Defendants state that removal is proper for the following reasons:

## I. BACKGROUND AND PROCEEDINGS IN STATE COURT

On June 23, 2026, Plaintiff Darius Watson filed a class action Complaint in Los Angeles County Superior Court in the State of California entitled *Darius Watson, individually, and on behalf of all others similarly situated, Plaintiff vs. Hertz Transporting, Inc., a Delaware corporation, The Hertz Corporation, a Delaware Corporation, Hertz Local Edition Transporting, Inc. a Delaware Corporation; and DOES 1 through 10, inclusive, Defendants.* The Complaint was assigned Los Angeles County Superior Court Case No. 26STCV19805.

The Complaint purports to allege eight claims for relief: (1) "Failure to Pay Minimum Wages"; (2) "Failure to Pay Overtime Compensation"; (3) "Failure to Provide Meal Periods"; (4) "Failure to Authorize and Permit Rest Breaks"; (5) "Failure to Indemnify Necessary Business Expenses"; (6) "Failure to Timely Pay Final Wages at Termination"; (7) "Failure to Provide Accurate Itemized Wage Statements"; and (8) "Unfair Business Practices."

On July 9, 2026, Plaintiff served Defendant, Hertz Transporting, Inc. and on July 15, 2026, Plaintiff served Defendant, The Hertz Corporation with the Summons and

Complaint in this action, along with the Civil Case Cover Sheet, Notice of Case Assignment, ADR Packet and Program Case Notice, and First Amended General Order. (Declaration of Christopher A. Crosman ["Crosman Decl."] at ¶ 3). True and correct copies of the Civil Case Cover Sheet, Notice of Case Assignment, ADR Packet and Program Case Notice, and First Amended General Order are attached hereto as **Exhibit A**. On August 7, 2026, Defendants filed their Answer to the Complaint in the Superior Court of California for the County of Los Angeles. A true and correct copy of Defendants' Answer is attached hereto as **Exhibit B.**

The Complaint seeks to certify a class of "[a]ll persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice of class certification to the Class is sent." (Ex. A, Complaint ¶ 25).

Exhibit A constitutes all pleadings, processes, and orders served on, or filed by, Defendants in this action.

## II. TIMELINESS OF REMOVAL

On July 9, 2026, Plaintiff served Defendants with the Summons and Complaint in this action. (Crosman Decl. at ¶ 3). This Notice of Removal is timely because it is being filed within thirty (30) days[1] of the service upon Defendants of a copy of the Summons and Complaint, and within one (1) year of the commencement of this action. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining the time for filing a notice of removal does not run until a party has been formally served with the summons and complaint under applicable state law).

[1] Under Federal Rule of Civil Procedure 6(a)(1)(C), if a legal deadline falls on a Saturday, Sunday, or legal holiday, the period is extended to the next day that is not a weekend or holiday. Thus, while the 30th day after service of the Complaint is Saturday, August 8, the deadline to remove is Monday, August 10, 2026.

## III. JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

This Court has original subject-matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), codified in relevant part in 28 U.S.C. section 1332(d)(2). As set forth below, this action is properly removable pursuant to 28 U.S.C. section 1441(a) because the alleged amount in controversy exceeds $5,000,000, exclusive of interest and costs, and it is a purported class action in which a class member is a citizen of a State different from that of Defendants (28 U.S.C. §§ 1332(d)(2) & (6)), and the number of putative class members is greater than 100. *See* 28 U.S.C. §§ 1332(d)(5)(B).

### A. There Is Minimal Diversity For Removal Under CAFA

CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction. That is, at least one purported class member must be a citizen of a state different from any named defendant. *See* 28 U.S.C. § 1332(d)(2)(A) ("any member of a class of plaintiffs is a citizen of a State different from any defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that to achieve its purposes CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement in 28 U.S.C. § 1332(d)(2)). Here, such minimal diversity exists among the parties as Plaintiff is citizen of a state that is different from Defendants' states of citizenship.

#### 1. Plaintiff Is Citizen of California

For diversity purposes, a person is a "citizen" of the state in which they are domiciled. *See Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place where he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir.

1986)); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes.").

Here, Plaintiff alleges that he has been employed by Defendants as a Transporter in Los Angeles County, California since July, 2025. (Ex. A, Complaint ¶ 7). Plaintiff provided Defendants with a California address when he applied for employment. (Declaration of LaKeisha Carter-Unaka ("Unaka Decl.") at ¶ 4). Throughout his entire employment with Defendant Hertz Transporting, Inc., Plaintiff maintained a California address on file for purposes of his personnel file, payroll checks, and other uses. (*Id.*) Plaintiff's last known home address is in Los Angeles, California. (*Id.* at ¶ 7). Furthermore, a search of public records relating to Plaintiff establishes that at all times during Plaintiff's employment with Defendant Hertz Transporting, Inc., through the present, Plaintiff resided in Los Angeles, California. (Crosman Decl. at ¶ 4 and Exhibit 1). Accordingly, Plaintiff is, and has been at all times since the institution of this action, a citizen of the State of California.

**2. Hertz Transporting, Inc. Is Not A Citizen of California**

Pursuant to 28 U.S.C. section 1332(c)(1), "for purposes of this subsection and section 1453 [28 U.S.C. § 1453], [a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

Courts apply the "nerve center" test to determine a corporation's principal place of business for diversity purposes. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.* Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based. *See Ho v. Ikon*

*Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

Hertz Transporting, Inc. is, and has been at all times since this action commenced, a corporation organized under the laws of the State of Delaware. (Unaka Decl. at ¶ 3).

Further, Hertz Transporting, Inc.'s principal place of business is, and has been at all times since this action commenced, located in the State of Florida. (Unaka Decl. at ¶ 3). Hertz Transporting, Inc.'s corporate headquarters are located in Estero, Florida, where its high level officers direct, control, and coordinate the company's activities. (*Id.*). Additionally, many of Hertz Transporting, Inc.'s administrative functions, including corporate finance, payroll, and accounting, are directed from the Estero, Florida office. (*Id.*) Accordingly, Hertz Transporting, Inc.'s principal place of business is Estero, Florida under the "nerve center" test. *See Hertz Corp. supra*, 559 U.S. at 92-93.

Therefore, for diversity of citizenship purposes, Hertz Transporting, Inc. is, and has been at all times since this action commenced, a citizen of the States of Delaware and Florida within the meaning of 28 U.S.C. section 1332(c)(1).

### 3. The Hertz Corporation Is Not A Citizen of California

Pursuant to 28 U.S.C. section 1332(c)(1), "for purposes of this subsection and section 1453 [28 U.S.C. § 1453], [a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

Courts apply the "nerve center" test to determine a corporation's principal place of business for diversity purposes. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.* Other relevant factors include where corporate executives maintain their offices, where corporate policies and procedures are made, and where primary corporate functions are based. *See Ho v. Ikon*

*Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

The Hertz Corporation is, and has been at all times since this action commenced, a corporation organized under the laws of the State of Delaware. (Unaka Decl. at ¶ 3).

Further, The Hertz Corporation's principal place of business is, and has been at all times since this action commenced, located in the State of Florida. (Unaka Decl. at ¶ 3). The Hertz Corporation's corporate headquarters are located in Estero, Florida, where its high level officers direct, control, and coordinate the company's activities. (*Id.*). Additionally, many of The Hertz Corporation's administrative functions, including corporate finance, payroll, and accounting, are directed from the Estero, Florida office. (*Id.*) Accordingly, The Hertz Corporation's principal place of business is Estero, Florida under the "nerve center" test. *See Hertz Corp. supra*, 559 U.S. at 92-93.

Therefore, for diversity of citizenship purposes, Hertz Transporting, Inc. is, and has been at all times since this action commenced, a citizen of the States of Delaware and Florida within the meaning of 28 U.S.C. section 1332(c)(1).

### 4. Hertz Local Edition Transporting, Inc. Is Not A Citizen of California

Pursuant to 28 U.S.C. section 1332(c)(1), "for purposes of this subsection and section 1453 [28 U.S.C. § 1453], [a] corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

Courts apply the "nerve center" test to determine a corporation's principal place of business for diversity purposes. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Under the "nerve center" test, the principal place of business is the state where the "corporation's officers direct, control, and coordinate the corporation's activities" and where the corporation maintains its headquarters. *Id.* Other relevant factors include where corporate executives maintain their offices, where corporate policies and

procedures are made, and where primary corporate functions are based. *See Ho v. Ikon Office Solutions, Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where corporation's headquarters were located, where the corporate officers worked, and from where corporate policies and procedures were made).

Hertz Local Edition Transporting, Inc. is, and has been at all times since this action commenced, a limited liability company organized under the laws of the State of Delaware. (Unaka Decl. at ¶ 3).

Further, Hertz Local Edition Transporting, Inc.'s principal place of business is, and has been at all times since this action commenced, located in the State of Florida. (Unaka Decl. at ¶ 3). Hertz Local Edition Transporting, Inc.'s corporate headquarters are located in Estero, Florida, where its high level officers direct, control, and coordinate the company's activities. (*Id.*). Additionally, many of Hertz Local Edition Transporting, Inc.'s administrative functions, including corporate finance, payroll, and accounting, are directed from the Estero, Florida office. (*Id.*) Accordingly, Hertz Local Edition Transporting, Inc.'s principal place of business is Estero, Florida under the "nerve center" test. *See Hertz Corp. supra*, 559 U.S. at 92-93.

Therefore, for diversity of citizenship purposes, Hertz Local Edition Transporting, Inc. is, and has been at all times since this action commenced, a citizen of the States of Delaware and Florida within the meaning of 28 U.S.C. section 1332(c)(1).

**5. Doe Defendants' Citizenship Must Be Disregarded**

The residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Abrego v. Dow Chem. Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (doe defendants need not join in removal). Thus, Doe defendants 1 through 10 do not deprive this Court of jurisdiction.

Accordingly, because Plaintiff is a citizen of California and Defendants are not citizens of California, diversity of citizenship exists between Plaintiff and Defendants for purposes of CAFA.

**6. The Number of Putative Class Members Exceeds 100**

CAFA requires that the aggregated number of members of all classes proposed in a complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

Plaintiff seeks relief on behalf of a putative class comprised of "All persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice of class certification to the Class is sent." (Ex. A, Complaint ¶ 25).

From June 23, 2022 through July 17, 2026 (the "putative class period"), there have been approximately 2,630 employees of Defendant Hertz Transporting, Inc. in California who fall within the alleged class definition. (Declaration of Kathleen McConnell ("McConnell Decl.") at ¶ 4). (Note that Plaintiff was only ever employed by Hertz Transporting, Inc. and therefore only the amount in controversy as to Defendant Hertz Transporting, Inc. is accounted for herein. The actual amount in controversy would be larger, as it would also include the employees of the other Defendants).

Accordingly, the aggregated number of members of the putative class proposed by Plaintiff far outnumbers the 100 member requirement.

**B. The Amount in Controversy Exceeds $5,000,000.00**

While Defendants specifically deny liability as to Plaintiff's claims, and deny that any of the violations alleged in the Complaint occurred, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs. All calculations supporting the amount in controversy are based on the Complaint's allegations (along with other documents as identified herein), assuming, without any admission, the truth of the allegations and assuming liability (which Defendants dispute) is established. Likewise, these calculations are based on the putative class alleged in the

Complaint and in no way indicate that class treatment is appropriate in this case, or that Plaintiff has standing to represent any such class, or that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. Defendants expressly reserve the right to challenge Plaintiff's claims, adequacy and standing to represent any class, class definitions, and calculation of damages in all respects.

In calculating the amount in controversy under CAFA, the claims of the individual members of a class are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep, S. Rep. No. 109-14, at 42 (2005). Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case… . Overall, § 1332(d) was intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.")

To establish that the amount in controversy exceeds the jurisdictional amount, the defendant need only make a plausible claim that the amount in controversy exceeds that amount. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014). The defendant need not include any evidence in support of a notice of removal. *Id.* at 87-88. In the event the plaintiff challenges the defendant's amount-in-controversy calculations, then the parties may both submit evidence and the Court will decide the issue based on a preponderance-of-the-evidence standard. *Id.* at 88.

Courts may assume a 100% violation rate in calculating the amount in controversy for removal purposes when a more precise calculation is not apparent on the face of the complaint. *See e.g. Altamirano v. Shaw Indus.*, No. C–13–0939 EMC, 2013 WL 2950600, *11-12 (N.D. Cal. June 14, 2013) ("Plaintiff's allegations about the pervasiveness of the policies" justified 100% violation rates.); *Coleman v. Estes Express Lines, Inc.*, 2010 U.S. Dist. LEXIS 79772 at *18-19 (C.D. Cal. 2010) ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate."); *Muniz v. Pilot Travel Centers LLC.*, Case No. S-07-0325, 2007 WL 1302504, * at 4 (E.D. Cal. May 1, 2007) ("Plaintiff is the 'master of [his] claim[s],' and if [he] wanted to avoid removal, [he] could have alleged facts specific to [his] claims which would narrow the scope of the putative class or the damages sought" to indicate a violation rate smaller than 100%.).

Here, Plaintiff seeks to assert nine class claims under various provisions of the California Labor Code and the Unfair Competition Law and seeks general damages, liquidated damages, statutory damages, penalties, restitution, lost wages, declaratory and injunctive relief, attorneys' fees, and costs on behalf of himself and the putative class. Based on a review of employment records, and even making the most conservative calculations, the amount in controversy on Plaintiff's putative class claims far exceeds the $5,000,000.00 jurisdictional amount even when accounting for only several of the claims.

**1. Failure to Pay Overtime Wages - Labor Code § 510 (Third Cause of Action)**

Plaintiff alleges that Defendants failed to pay him and putative class members for all overtime hours worked. Specifically, Plaintiff alleges that "due to Defendants only providing one terminal for clocking in and out, Plaintiff and the Class were required to wait in line for several minutes off-the-clock to utilize Defendants' time clock machine." (Ex. A, Complaint ¶ 17). Plaintiff alleges that he and putative class members typically

worked full time, at least eight hours per shift, meaning any unpaid time should have been paid at overtime rates. (Ex. A, Complaint ¶¶ 15, 17). Because Plaintiff alleges that every putative class member had to work "several minutes off-the-clock" *every time* they clocked in, this would mean that *every* putative class member would have experienced underpaid overtime on *each day* that they worked. Further, even assuming each putative class member only clocked in twice per day (at the beginning of a shift and when returning from lunch), Plaintiff's claim that they had to wait "several minutes off-the-clock" for each clock-in would mean that, at a minimum, each putative class member worked four minutes off the clock each day and 20 minutes each week.

The statute of limitations for recovery of unpaid wages is three years. C.C.P. § 338. In addition, where a plaintiff asserts a claim to recover unpaid wages under the Unfair Competition Law, as Plaintiff does here, the statute of limitations is four years. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-9 (2000).

From June 23, 2022 through July 17, 2026, there were approximately 2,630 putative class members employed by Defendant Hertz Transporting Inc. (McConnell Decl. at ¶ 4). These putative class members worked a total of approximately 151,420 workweeks during this period. (*Id.*). The average base hourly rate for these putative class members, was approximately $17.22 per hour, and their average base overtime rate was approximately $25.83 per hour. (*Id.*).

For purposes of this removal analysis, assuming conservatively that each putative class member only worked five minutes of unpaid overtime per workweek, then the amount in controversy for the claim for unpaid wages would be **$325,801.17** [$25.83 per hour x 0.0833 hour per workweek x 151,420 total workweeks]. The *actual* amount in controversy based on the Complaint's allegations would be much higher.

**2. Meal Period Premiums - Labor Code § 226.7 (Fourth Cause of Action)**

Plaintiff alleges that Defendants *never* provided proper meal periods because supposedly "Plaintiff and the Class were required to keep their personal cell phones on at

all times, including during meal periods, and were required to respond to work requests from supervisors while clocked out during purported meal periods and after clocking out of shifts." (Ex. A, Complaint ¶ 17). "These requirements also meant Plaintiff and the Class were not relieved of all duty during their meal periods. . . . As a result, Plaintiff and the Class were not provided with uninterrupted and complete meal periods." (*Id.* at ¶ 18). Pursuant to *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269 (2018), where employees are required to be "on call" during breaks, such breaks do not comply with the law and break premiums are due. Pursuant to Labor Code section 226.7, the money owed for a meal period not authorized and permitted is one hour of pay for each violation. *See* Cal. Lab. C § 226.7(c).

The statute of limitations for recovery of meal period premiums under Labor Code § 226.7 is three years. *Murphy v. Kenneth Cole Prod., Inc.*, 40 Cal. 4th 1094, 1114 (2007). However, meal and rest premiums constitute wages. *Id*. Where, as here, a plaintiff asserts a claim to recover unpaid wages under the Unfair Competition Law, the statute of limitations may be extended to four years. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-9 (2000).

From June 23, 2022 through July 17, 2026, there were approximately 2,630 putative class members employed by Defendant Hertz Transporting Inc. (McConnell Decl. at ¶ 4). These putative class members worked a total of approximately 151,420 workweeks during this period. (*Id.*). The average base hourly rate for these putative class members, was approximately $17.22 per hour. (*Id.*). Plaintiff alleges that he and putative class members typically worked at least eight hours a day, five days a week, and were thus entitled to at least one meal period per day worked. (Ex. A, Complaint ¶¶ 15, 17).

As discussed above, Plaintiff asserts that Defendants *never* relieved putative class members of all duties due to being "on call," so therefore putative class members were *never* provided with proper compliant meal periods. However, for purposes of this removal analysis, assuming conservatively that the 2,630 putative class members were not provided just *one* lawful meal period each week, and are therefore due only one meal

period premium per week (meaning on one out of every five days), the amount in controversy for the claim for meal period premiums would be **$2,607,452.40** [151,420 workweeks x 1 denied meal x $17.22 meal period premium]. The *actual* amount in controversy based on the Complaint's allegations would be much higher.

### 3. Rest Break Premiums - Labor Code § 226.7 (Fifth Cause of Action)

Plaintiff alleges that Defendants *never* provided putative class members with lawful rest breaks during the relevant time period. Specifically, Plaintiff alleges that Defendants *never* provided proper rest breaks because supposedly "Plaintiff and the Class were required to keep their cell phones on at all times, including during rest periods, and were required to respond to work requests from supervisors while on their purported rest periods. As a result, Plaintiff and the Class were rarely provided with compliant rest periods and were regularly required to work through their rest periods." (Ex. A, Complaint ¶ 19). Pursuant to *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th 257, 269 (2018), where employees are required to be "on call" during breaks, such breaks do not comply with the law and break premiums are due.

As discussed above, in his Complaint Plaintiff asserts that the putative class members never received proper rest breaks due to always being "on call." Pursuant to Labor Code section 226.7, the money owed for a rest break not authorized and permitted is one hour of pay for each violation. *See* Cal. Lab. C § 226.7(c).

The statute of limitations for recovery of rest break premiums under Labor Code § 226.7 is three years. *Murphy v. Kenneth Cole Prod., Inc.*, 40 Cal. 4th 1094, 1114 (2007). However, meal and rest premiums constitute wages. (*Id.*) Where, as here, a plaintiff asserts a claim to recover unpaid wages under the Unfair Competition Law, the statute of limitations may be extended to four years. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 178-9 (2000).

From June 23, 2022 through July 17, 2026, there were approximately 2,630 putative class members employed by Defendants. (McConnell Decl. at ¶ 4). These

putative class members worked a total of approximately 151,420 workweeks during this period. (*Id.*). The average base hourly rate for these putative class members, was approximately $17.22 per hour. (*Id.*). Plaintiff alleges that he and putative class members typically worked at least eight hours a day, five days a week, and were thus entitled to at least two rest breaks per day worked. (Ex. A, Complaint ¶¶ 15, 17).

As discussed above, Plaintiff asserts that putative class members were *never* provided with proper compliant rest breaks. However, for purposes of this removal analysis, assuming conservatively that the 2,630 putative class members were not provided just *one* lawful rest break each week, and are therefore due only one rest break premium per week (meaning on one out of every five days), the amount in controversy for the claim for rest break premiums would be **$2,607,452.40** [151,420 workweeks x 1 denied meal x $17.22 meal period premium]. The *actual* amount in controversy based on the Complaint's allegations would be much higher.

**4. Wage Statement Penalties - Labor Code § 226 (Seventh Cause of Action)**

Plaintiff alleges that, because Defendants did not pay putative class members for all hours worked, and did not pay them premiums for meal and rest periods that were not properly provided, the putative class members' wages statements also did not reflect such hours worked and premiums due, and thus were not accurate and violated Labor Code section 226(a). (Ex. A, Complaint ¶ 22.) Labor Code § 226(e) provides an employee a penalty of $50.00 for the initial pay period in which a wage statement violation occurs, and $100.00 for each further pay period in which a violation occurs, up to a maximum penalty of $4,000.00 per employee. The statute of limitations for penalties under Labor Code section 226 is one year. Cal. Civ. Proc. Code § 340(a).

Putative class members were paid on a weekly basis throughout the putative class period. (Unaka Decl. at ¶ 5). The total number of pay periods for putative class members in California from June 23, 2025, through July 17, 2026 is 51,391. (McConnell Decl. ¶ 5). Allocating a $50 penalty to the first such pay period per employee, and $100 to all

subsequent pay periods, and imposing a cap of $4,000 in wage statement penalties per employee, the amount in controversy on Plaintiff's wage statement claim is **$4,148,900.00.** (McConnell Decl. ¶ 5).

### 5. Waiting Time Penalties - Labor Code § 203 (Fifth Cause of Action)

Plaintiff alleges that Defendants failed to timely pay Plaintiff and putative class members all wages due upon separation of employment. (Ex. A, Complaint ¶ 21). As discussed above, Plaintiff contends that *all* putative class members are due unpaid wages and meal and rest period premiums; therefore, all putative class members who ended their employment during the limitations period are alleged to be due waiting time penalties.

Labor Code § 203(a) states that the wages of an employee who quits "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

The statute of limitations for recovery of waiting time penalties under Labor Code § 203 is three years. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1401 (2010) (holding that a three year statute of limitations applied to § 203 claims).

From June 23, 2023, through July 17, 2026, there were approximately 1,432 putative class members whose employment with Defendant ended. (McConnell Decl. at ¶ 4). The average hourly rate for these putative class members was approximately $17.22 per hour. (*Id.*). Assuming that these 1,432 former employees are owed the maximum penalty of 8 hours of pay per day for 30 days, as Plaintiff claims, the alleged amount in controversy for the claim for waiting time penalties would be **$5,918,169.60** [$17.22 per hour x 8 hours per day x 30 days x 1,432 terminated putative class members].

### 6. Attorneys' Fees

Plaintiff additionally seeks attorneys' fees. (Ex. A, Complaint at Prayer for Relief.) *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004,

1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.").

A reasonable estimate of fees likely recoverable may be used in calculating the amount in controversy. *See Longmire v. HMS Host USA, Inc.*, No. 12-cv-2203 AJB (DHB), 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (citing *Brady*, 243 F. Supp. 2d at 1010-11); *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *2 (E.D. Cal. May 1, 2007) (attorneys' fees appropriately included in determining amount in controversy).

In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation; courts may depart from this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th Cir. 2000) ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *28 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the amount of 30% of the total gross settlement amount to be reasonable).

In the present matter, 25% of the aggregate *conservative* amount in controversy, as described herein, would amount to **$3,901,943.89.**

### 7. Summary of Amount in Controversy

As set forth above, Plaintiff's claims cause the amount in controversy to exceed $5,000,000, even though the calculations herein use more conservative estimates for the amount in controversy than what is indicated by the allegations of the Complaint:

| **Claim** | **Amount In Controversy** |
|---|---|
| 1. Unpaid Wages | $325,801.17 |
| 2. Meal Period Penalties | $2,607,452.40 |
| 3. Rest Break Penalties | $2,607,452.40 |
| 4. Wage Statement Penalties | $4,148,900.00 |
| 5. Waiting Time Penalties | $5,918,169.60 |
| 5. Attorneys' Fees | $3,901,943.89 |
| **Total** | **$19,509,719.46** |

Because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2). This action is proper for removal to this Court pursuant to 28 U.S.C. § 1441(a).

## IV. VENUE

Venue lies in the United States District Court, Central District of California, pursuant to 28 U.S.C. §§ 84(c)(2), 1441 and 1446(a). This action was filed originally in the Superior Court of the State of California, County of Los Angeles. The County of Los Angeles is within the jurisdiction of the United States District Court, Central District of California.

## V. NOTICE OF REMOVAL

A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Los Angeles, pursuant to 28 U.S.C. § 1446(d).

**VI. PRAYER FOR REMOVAL**

WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of Los Angeles to the United States District Court for the Central District of California.

DATED: August 10, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: Christopher A. Crosman

Christopher A. Crosman
Matthew Isaac
Katherine Farr
Attorneys for Defendants
HERTZ TRANSPORTING, INC, THE HERTZ CORPORATION AND HERTZ LOCAL EDITION TRANSPORTING, INC.